UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY A. FERGERSON,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 5:17-cv-00161-KES<br><br>MEMORANDUM OPINION AND ORDER |

Randy A. Fergerson ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

**A.　Education and Employment History.**

Plaintiff was born in 1984. Administrative Record ("AR") 339. He graduated from high school in 2002. AR 39, 205, 339. From 2001-2003, he

worked part-time at Walmart. AR 40, 53. In 2005, he started vocational training to perform smog checks, but he did not complete it due to the birth of his first son. AR 38. In 2006, he started driving buses. AR 39. In 2006 or 2007, he obtained employment as a truck driver. AR 237; 339. After about nine months on that job, he was in an accident and hurt his back. AR 339. He was on disability leave from 2007 until 2009 or 2010, then quit because driving was hard on his back. AR 39, 185 (last earnings in 2010), 338. He applied for disability benefits in 2013. AR 174-182. By January 2014, he had another baby on the way. AR 339.

**B.    Benefits-Related Proceedings.**

In September 2013, Plaintiff filed applications for SSI and DIB alleging the onset of disability on April 25, 2010. AR 57-58; 174-182. An ALJ conducted a hearing on June 11, 2015, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 31-56. The ALJ published an unfavorable decision on July 2, 2015. AR 17-26.

The ALJ found that Plaintiff suffers from the medically determinable severe impairments of lumbago (lower back pain) and depression. AR 19. Despite his lumbago, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with some additional exertional and postural restrictions. AR 21. Despite his depression, the ALJ found that Plaintiff could perform "non-public and semi-skilled work." Id.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform his past relevant work as a truck driver. AR 24. Alternatively, the ALJ found that Plaintiff could perform the unskilled jobs of cleaner, landscape worker, or hand packager. AR 25. Based on these findings, the ALJ concluded that Plaintiff is not disabled. Id.

///
///
///

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ erred in evaluating the opinions of consultative psychiatrist, Dr. Ijemba Ijeaku, M.D. Dkt. 21, Joint Stipulation ("JS") at 4.

Dr. Ijeaku's psychiatric evaluation contains the following opinions: (1) Plaintiff's ability to "maintain concentration, attendance, and persistence is moderately impaired;" (2) Plaintiff's "ability to perform activities within a schedule and maintain regular attendance is moderately impaired;" (3) Plaintiff's ability to "respond appropriately to changes in a work setting is moderately impaired;" and (4) Plaintiff's ability "to complete a normal workday/workweek without interruptions from psychiatric based symptoms is mildly impaired." AR 341. Plaintiff argues that the ALJ "did not give any reason to reject" Dr. Ijeaku's and agency psychiatrists' opinions regarding (1) Plaintiff's "limited ability to maintain attendance and show up on time;" and (2) the "limitations in [his] ability to adapt to routine changes in the workplace." JS at 6, citing AR 81. Plaintiff contends that these difficulties maintaining attendance, showing up on time, and adapting to changes render him unable to work as a truck driver or perform the unskilled jobs identified by the ALJ. Id. The VE testified that a hypothetical person with Plaintiff's RFC could not be employed if he missed two days of work each week. AR 55.

Respondent contends that the ALJ did not reject Dr. Ijeaku's opinions, but gave "weight" to those opinions which, overall, were less restrictive than the RFC determined by the ALJ. JS at 7, citing AR 23. The ALJ considered Dr. Ijeaku's opinions along with reports prepared by reviewing state agency physicians Alan Berkowitz, M.D., and H. Skopec, M.D., in finding that Plaintiff could perform non-public, semiskilled work. JS at 7, citing AR 21-23, 63, 108. The ALJ accommodated Plaintiff's moderate difficulties in maintaining concentration and adapting to changes by limiting him to an RFC of semiskilled work and

alternatively finding unskilled jobs that Plaintiff could perform. JS at 10 & n. 1, citing AR 21-23, 25. The ALJ reduced the stress of social interactions that might cause Plaintiff to miss work by limiting him to non-public jobs. Id. These accommodations are consistent with Dr. Ijeaku's opinions of moderate or mild limitations. JS at 9. Ultimately, Respondent argues that the ALJ properly translated the medical evidence into a concrete RFC. JS at 7.

Issue Two: Whether the ALJ erred in discrediting Plaintiff's testimony concerning the limiting effects of his symptoms. JS at 4.

### III.
### DISCUSSION.

**A.  Issue One: The ALJ's Evaluation of Dr. Ijeaku's Opinions.**

**1.  Rules for Weighing Conflicting Medical Evidence.**

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant .…" Turner v. Comm'r of SSA, 613 F.3d 1217, 1222 (9th Cir. 2010) (citation omitted). This rule, however, is not absolute. Where the treating physician's opinion is not contradicted by an examining physician, that opinion may be rejected only for "clear and convincing reasons." Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) (citing Reddick v. Chater, 157 F.3d. 715, 725 (9th Cir. 1998)). Where, however, the opinions of the treating and examining physicians conflict, if the ALJ wishes to disregard the opinion of the treating physician, the ALJ must give "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." (citation omitted)).

Thus, under Andrews and Orn, the dispositive questions are (1) whether the

ALJ's RFC determination rejected any of Dr. Ijeaku's opinions in favor of contrary opinions by other medical sources, and if so, (2) did the ALJ give "specific, legitimate reasons" for doing so.

### 2. Summary of Depression-Related Medical Evidence.

Plaintiff has no treating mental health specialist. AR 36. He receives medication from his general family practice doctor, Dr. Craig Mueller. Id. By no later than February 2013, Dr. Mueller started to prescribe Remeron (mirtazapine, an antidepressant).[1] AR 305. At that time, Plaintiff completed a depression questionnaire indicating that his symptoms only made it "somewhat difficult" for him to work and get along with other people. AR 306. Dr. Mueller's progress notes from July and October 2013 report a continuing history of depression. AR 320-21.

In January 2014, Dr. Ijeaku completed a psychiatric evaluation. AR 337-42. Dr. Ijeaku noted that Plaintiff was taking Remeron but was not seeing a counselor or therapist. AR 338-39. Dr. Ijeaku diagnosed Plaintiff as suffering from a depressive disorder, but ruled out a major depressive disorder. AR 341.

Agency psychiatrist Dr. Berkowitz reviewed Plaintiff's medical records. AR 57-70. He assessed Plaintiff's depression as a "severe" impairment, but found that Plaintiff had only mild limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. AR 64-65. He disagreed with Dr. Ijeaku's finding of moderate limitations in meeting schedules and maintaining regular attendance, because Plaintiff had arrived for his appointment with Dr. Ijeaku on time. AR 65, citing AR 337. He further noted that Dr. Ijeaku's report was "internally inconsistent." AR 66. Dr. Berkowitz found

---

[1] While AR 305 states a "start date" in February 2013, an earlier 2011 record also references mirtazapine, saying "off mirtazapine," and an October 2010 medical record appears to indicate Plaintiff's depression "improved" with mirtazapine. AR 293; 295.

Plaintiff capable of maintaining the necessary concentration, persistence, and pace to work a normal schedule if he was limited to "simple/unskilled" or "semiskilled tasks." AR 68.

Upon Plaintiff's request for reconsideration, his file was reviewed by Dr. Skopec who affirmed Dr. Berkowitz's findings. AR 87-98. Since the agency psychiatrists disagreed with certain of Dr. Ijeaku's opinions, including that Plaintiff was "moderately" limited in his abilities to perform within a schedule and maintain attendance, Dr. Ijeaku's opinions provide the most restrictive view of Plaintiff's relevant abilities.

### 3. The ALJ's Translation of the Medical Evidence into an RFC.

The ALJ summarized Dr. Ijeaku's report and gave it "some weight." AR 23. The ALJ noted the moderate limitations found by Dr. Ijeaku, but he concluded that "the mental restrictions defined in the above residual functional capacity [i.e., a limitation to unskilled or semiskilled non-public work] better reflect the limited objective findings in the record." AR 23.

The ALJ also gave some weight to the mental health assessments of the two state agency psychiatric consultants. AR 23. They determined that Plaintiff could carry out even complex tasks and could adequately interact with others. Id., citing AR 57-84; 87-110. The ALJ concluded that a more restrictive RFC limiting Plaintiff to non-public and semiskilled work was "more appropriate." AR 24.

### 4. Analysis of Claimed Errors.

#### a. Attendance and Punctuality.

Plaintiff argues that whenever a treating or examining physician opines that a claimant has "moderate" limitations meeting schedules or maintaining attendance, the ALJ must either (1) give a specific and legitimate reason for rejecting those opinions, or (2) find the claimant disabled, because punctuality and regular attendance are necessary to keep any job. JS at 5-6.

Not so. First, while Dr. Ijeaku found that Plaintiff was moderately impaired

in the areas of punctuality and attendance, she did not quantify her opinion by stating that Plaintiff's mental impairments would cause him to be late or miss work "X" days each month. Dr. Ijeaku's report did not provide a customized definition for a "moderate" limitation, so, as an agency consultative examiner, she presumably used that word consistent with the Social Security Administration's definition.[2] Form HA-1152-U3 defines a "moderate" limitation to mean "[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily." Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-U3, Medical Source Statement of Ability to Do Work-Related Activities (Mental) (emphasis added); Cantu v. Colvin, 2015 U.S. Dist. LEXIS 29367, *45-46 (N.D. Cal. Mar. 10, 2015) (citing Form HA-1152-U3 as providing the definition of a "moderate" limitation). Thus, the ALJ could reasonably have understood Dr. Ijeaku as opining that Plaintiff "can still function satisfactorily" in workplace attendance. The ALJ, therefore, was not required to give specific and legitimate reasons for supposedly "rejecting" Dr. Ijeaku's finding of a "moderate" attendance impairment, because the ALJ did not in fact reject that finding.

The Court's conclusion is supported by several factors. First, the apparent reason Dr. Ijeaku opined that Plaintiff would have "moderate" attendance impairment is that Plaintiff suffers from depression which impairs his ability to adapt to stress and maintain concentration. AR 341. The ALJ, by imposing limitations on Plaintiff's workplace stressors more restrictive than those suggested

---

[2] Although 20 C.F.R. § 404.1520a discusses a rating scale of none, mild, moderate, marked, or extreme to be used by the Social Security Administration in evaluating mental work limitations, this regulation does not provide definitions to be used by an ALJ in interpreting the language of a medical opinion presented as part of a disability claim. Turner v. Berryhill, No. 15-56844, 2017 U.S. App. LEXIS 12892, at *723 (9th Cir. July 18, 2017).

7

by Dr. Ijeaku (i.e., non-public, unskilled or semiskilled work), mitigated against the stress likely to aggravate Plaintiff's depression and cause absenteeism. AR 24. The RFC, therefore, was a reasonable translation of Dr. Ijeaku concerns. This is consistent with the ALJ saying that he gave "some weight" to Dr. Ijeaku's report but ultimately determined a more restrictive RFC. AR 23.

Second, the regulations that describe how ALJs are to formulate RFCs addressing mental abilities do not require ALJs to specify how many days each month a claimant might be absent or late. Rather, the RFC must state the claimant's "residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(c); 416.945(c). Working on a "regular and continuing basis" is not inconsistent with occasional absenteeism, i.e., a "moderate" level of absenteeism that is "more than slight, but the individual can still function satisfactorily." Thus, the ALJ's failure to modify the "default" position of any RFC (i.e., the RFC states the most a claimant can do "on a regular and continuing basis") did not constitute a "rejection" of Dr. Ijeaku's opinions.

Third, neither Dr. Ijeaku nor any of the other medical consultants who evaluated Plaintiff's psychological health opined that Plaintiff would need to miss "X" days of work each month. In formulating the RFC, an ALJ is not required to make up restrictions that are not actually articulated by any medical source or to give "legitimate and specific reasons" for rejecting restrictions never articulated. Instead, the hypothetical questions posed to the VE based on the RFC must set out "all the limitations and restrictions of a particular claimant" based on the medical evidence accepted by the ALJ. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (emphasis and citations omitted); see also Turner, 2017 U.S. App. LEXIS 12892, at *722 (affirming ALJ did not err in declining to specify an absentee rate or give reasons for rejecting medical opinion that claimant had a moderately impaired ability to maintain attendance).

This is particularly true where counsel for Plaintiff did not sufficiently bring

the issues of regular attendance or punctuality to the ALJ's attention. At the hearing, Plaintiff's counsel knew that Dr. Ijeaku had opined Plaintiff was "moderately" limited in the areas of attendance and punctuality. After the VE opined that a hypothetical person with Plaintiff's RFC could work several unskilled jobs, counsel could have asked the VE if her opinion would change if mental health issues caused that hypothetical person to miss one day of work each month, or two days, or three days, etc., to identify the breaking point where employment was precluded. Instead, the ALJ—not counsel—asked the VE to assume a hypothetical person with the limitations in Plaintiff's RFC and who would miss two days of work each week. AR 55. Not surprisingly, the VE testified that missing work 2/5 of the time would preclude all work. Id. There is no reasonable definition of "moderate" that would equate a moderate attendance impairment to missing work 2/5 of the time.

Ultimately, it is Plaintiff's burden to prove his disability. Valentine v. Comm'r of SSA, 574 F.3d 685, 689 (9th Cir. 2009). Counsel's failure to suggest quantified limits on Plaintiff's regular work attendance before the ALJ or the VE is tantamount to invited error.

          b.      Concentration, Persistence and Pace.

The ALJ noted Dr. Ijeaku's opinion that Plaintiff was moderately limited in maintaining concentration and persistence. AR 23, citing AR 341. The ALJ also noted that Drs. Berkowitz and Skopec opined Plaintiff "was able to maintain concentration, persistence and pace throughout a normal workday or workweek as related to simple, unskilled or semiskilled tasks …." AR 23, citing AR 64-68, 87-96. The ALJ ultimately found that an RFC limited to semiskilled or unskilled work "better reflect[ed] the limited objective findings in the record" and thus adequately accounted for Plaintiff's difficulties in this functional area. AR 23.

This finding is supported by substantial evidence. Plaintiff had sufficient mental abilities to graduate from high school, obtain a commercial driver's license,

9

and work as a bus and truck driver. AR 38-39. No evidence in the record suggests that Plaintiff had difficulty performing the mental demands of his prior driving jobs. Rather, he quit working as a truck driver after he hurt his back. AR 39.

In any event, given the ALJ's alternative finding that Plaintiff could perform unskilled work, any error in failing to explain more thoroughly why the ALJ credited the agency physicians' opinions over Dr. Ijeaku's was harmless. AR 25. Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006). A "decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

A limitation to "simple, routine, repetitive" work sufficiently accommodates medical-opinion evidence that the claimant had a "moderate" limitation in concentration and attention. Curtin v. Colvin, 14-cv-2551-JPR, 2016 U.S. Dist. LEXIS 61973, *15 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (2008)); see also Withrow v. Colvin, 672 Fed. App'x 748, 749 (9th Cir. Jan. 4, 2017) ("[C]laimants with moderate mental limitations are capable of doing simple unskilled work.").[3] The regulations define "unskilled" work as work that "needs

---

[3] Plaintiff did not raise the issue of pace in his alleged claims of error. See JS at 6. The ALJ's finding that Plaintiff could perform unskilled jobs, though, also sufficiently addresses any pace-related concerns on this record. In Stubbs-Danielson, the Court noted medical evidence that the claimant showed a slow pace in thought and action, but nonetheless concluded that a restriction to "simple tasks" adequately accommodated her limitations. Stubbs-Danielson, 539 F.3d at 1174; see also id. at 1171 (Plaintiff showed "a slow pace in thought and action"); 1173 (Plaintiff had "a slow pace, both in thinking & actions"); cf Brink v. Comm'r of SSA, 343 Fed. App'x 211, 212 (9th Cir. Aug. 18, 2009). Here, the ALJ concluded that Plaintiff could do several unskilled jobs (i.e., cleaner, landscape worker, hand packager). Where Dr. Ijeaku stated that Plaintiff could carry out both "complex" and "simple instructions," AR at 341, and did not include pace limitations, the

little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Cases consistently find that an RFC for simple work is consistent with performing unskilled work. Hongdo Thi Do v. Colvin, 2013 U.S. Dist. LEXIS 121287, *30-31 (E.D. Cal. Aug. 26, 2013) (collecting cases).

Here, while the ALJ did not limit Plaintiff to "simple" work, he did find that Plaintiff could do several alternative "unskilled" jobs based on the VE's testimony. AR 25. As a result, any error in not fully crediting Dr. Ijeaku's opinions and limiting Plaintiff's RFC to simple, unskilled work due to moderate difficulties in maintaining concentration or persistence was harmless error.

**B.    Issue Two:  Plaintiff's Testimony.**

**1.    Rules for Evaluating Claimants' Subjective Symptom Testimony.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

---

ALJ's conclusion is supported.

11

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681.

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.[4]

---

[4] The Social Security Administration ("SSA") recently published SSR 16-

### 2. Summary of Plaintiff's Testimony.

#### a. Physical Limitations.

When asked how much weight he could carry without problems, Plaintiff said it hurt his back to carry "a couple of drinks or whatever, like in the small bags … from the store around the corner back home." AR 47. He can pick up his 40-pound son to change his diapers, but it hurts his back to do so. AR 46.

Plaintiff testified that he can walk less than a mile. AR 47. He can only stand for 30 minutes before he must sit or lie down. AR 48. He spends most of his day lying down. AR 48-49.

Plaintiff also testified however, that he has been taking Norco three or four times a day for back pain since 2007, and that "when [he has his] medication, [he] can function normal." AR 35-36.

#### b. Mental Limitations.

When asked about the symptoms of his depression, he explained that he does not "feel like being around anybody or talking to anybody" and "[t]hat's about it." AR 50. About every other day, he feels so depressed that he does not go to his girlfriend's house. Id. He takes depression medication every night; it helps "mellow [him] down" but makes him drowsy. AR 36-37, 50.

///
///

---

3p, 2016 SSR LEXIS 4 (Mar. 16, 2016). "[SSR 16-3p] eliminates use of the term 'credibility' from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character." Murphy v. Comm'r of SSA, 15-cv-126, 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, after the ALJ ruled on this case. Id. at 26 n.6. Plaintiff neither argues that SSR 16-3p applies retroactively nor that its retroactive application would make a difference in this case. The Court, therefore, applies the rules for analyzing claimant credibility in effect at the time of the ALJ's decision.

### 3. The ALJ Gave Clear and Convincing Reasons for Disbelieving Plaintiff's Testimony Concerning the Limiting Effects of His Back Pain.

#### a. Inconsistent with Treatment.

The ALJ found that the "conservative and limited treatment" Plaintiff received since April 2010 is not consistent with someone suffering from so much back pain that he needs to spend most of his time lying down. AR 22. Plaintiff argues that his treatment has not been conservative, because he was prescribed Norco. JS at 16-17.

It is unclear how long Plaintiff has been taking Norco. Compare AR 287 (December 2011 treatment notes saying "pt needs Rx on meds" and referencing mirtazapine, but saying "CLBP [chronic low back pain] controlled"); AR 320-21 (July and October 2013 treatment notes referencing Norco); AR 311 (February 2013 notes referencing other pain medications, but not Norco); AR 231-32 (November 2013 Adult Function report indicating that Plaintiff is not taking any medication); AR 36 (hearing testimony that Plaintiff has been taking Norco since 2007).[5]

Accepting that Plaintiff has been taking Norco since at least 2013, the ALJ correctly found that taking narcotic pain medication, while serious treatment, is still more conservative than one would expect for an individual as severely disabled as Plaintiff claims to be. There is no evidence in the record that Plaintiff ever consulted a pain management specialist, a physical therapist, or a surgeon. AR 324. That Plaintiff's sole pain treatment consists of medication prescribed by his primary care physician is inconsistent with the extent of his claimed limitations.

///

---

[5] There is no evidence in the record describing Plaintiff's injuries or medical treatment immediately following his 2007 accident.

b. Inconsistent with Objective Medical Evidence.

The ALJ found Plaintiff's reported physical limitations were "greater than expected in light of the objective evidence." AR 22. Indeed, the reviewing agency physicians did not even consider Plaintiff's back condition a "severe" impairment. AR 64; 93.

The objective evidence regarding Plaintiff's back condition consists of (1) January 2012 lumbar spine x-rays (AR 286); (2) February 2013 lumbar spine x-rays (AR 312); (3) July 2014 lumbar spine x-rays (AR 348), and (4) November 2014 lumbar spine MRI. AR 346. A radiologist interpreted the 2012 x-rays as a "[n]ormal complete lumbar spine study …." AR 286. The 2013 x-rays were also interpreted as "normal" and "unremarkable." AR 312. The 2014 x-rays were interpreted as a "[n]ormal lumbar spine study," but for possible kidney stones. AR 348. The 2014 MRI showed "[m]ild degenerative changes" and "mild-to-moderate bilateral lateral recess stenosis," along with other findings. AR 346 (copy at AR 367). Plaintiff argues that since spinal stenosis can cause pain, the objective evidence is not inconsistent with Plaintiff's testimony. JS at 17-18.

The radiologist's one-page interpretation of the 2014 MRI primarily uses the word "mild" to describe any abnormalities observed. Given Plaintiff's claim that his disability began in 2010, but the only imaging study showing any abnormalities was the 2014 MRI, and that showed "mild-to-moderate" abnormalities at worst, the ALJ's finding of inconsistency is supported by substantial evidence.

**4. The ALJ Gave Clear and Convincing Reasons For Disbelieving Plaintiff's Testimony Concerning the Limiting Effects of His Depression.**

a. Inconsistent with Treatment.

Again, the ALJ found that the "conservative and limited treatment" Plaintiff received for his depression is inconsistent with his claim of disabling symptoms. AR 22, 23. As the ALJ pointed out, the only treating records were Dr. Mueller's

progress notes and prescriptions. AR 23. In January 2014, Dr. Ijeaku opined that Plaintiff would benefit from psychiatric care. AR 341. At the June 2015 hearing, Plaintiff's counsel stated that Plaintiff was still not seeing a psychiatrist and instead relied on prescriptions from Dr. Mueller. AR 36. There is no evidence that Plaintiff was ever referred to a psychologist, psychiatrist, or therapist. While Dr. Mueller was prescribing Remeron at least by February 2013 (AR 305), Plaintiff's November 2013 Adult Function Report did not identify that he was taking any medication for depression or any other condition. AR 231.

The ALJ did not err in concluding that this treatment record is not consistent with someone who claims his depression renders him unable to work.

b. Inconsistent with Daily Activities.

The ALJ found that Plaintiff's performed "tasks reflect[ing] relatively normal levels of activity." AR 20. The ALJ cited Exhibit 4E which includes the Adult Function Report completed by Plaintiff's girlfriend. Id. In a companion Third Party Adult Function Report, she indicated that she and Plaintiff spend 70% of their time together. AR 212. Plaintiff can do light house chores comparable to unskilled work, such as sweeping, wiping countertops, using the microwave, and putting clothes in the washing machine. AR 213-14. He goes outside every day and he can use public transportation. AR 215. He reads car magazines and can finish a book. AR 216-17. He plays cards and talks on the phone. AR 216. Despite how much time they spend together, his girlfriend was unaware that he was taking any medication. AR 219.

The ALJ also cited the fact that Plaintiff spends time with his children. AR 20. He testified that his children stay with him "[o]ff and on." AR 46. When asked if he has problems caring for his two children, the only problem Plaintiff identified involved lifting. Id. So too, his girlfriend said that his son's mom helps him care for his son with "physical task[s] and financially," but she did not identify any childcare tasks that Plaintiff cannot perform because of mental impairments.

AR 213.

The ALJ did not err in concluding that this record of daily activities is inconsistent with disabling depression.

        c.        Inconsistent with Other Testimony.

Plaintiff's grandmother testified at the hearing. Contrary to Plaintiff's testimony that he does not "feel like being around anybody or talking to anybody" because of his depression (AR 50), she testified that he spent 50 to 60% of his time with his girlfriend. AR 43. They go out together to friends' or relatives' homes. AR 44. His grandmother thought that he gets along with other people. AR 45. The ALJ contrasted Plaintiff's testimony with that of his grandmother. AR 20. This inconsistency provides a third clear and convincing reason to discount Plaintiff's testimony.[6]

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED.

Dated: November 01, 2017

*/s/ Karen E. Scott*
KAREN E. SCOTT
United States Magistrate Judge

---

[6] There are other inconsistencies in the record. For example, in December 2013, Plaintiff denied alcohol use to Dr. Moazzaz. AR 325. In February 2013, he told Dr. Mueller he drinks 1-2 beers once a week. AR 307. At the 2015 hearing, he could not remember the last time he had a drink, other than that it had been "a while." AR 51-52.